IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: HA-LO INDUSTRIES, INC., et al., <br><br> Debtors. <br><br><br> STEPHEN H. WOLFF, <br><br> Appellant, <br><br> v. <br><br> HALO INDUSTRIES, INC., <br><br> Appellee. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. 05 C 2004 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

On December 31, 1997, HA-LO Industries, Inc. acquired Wolff Marketing Group from Stephen Wolff, the sole shareholder. WMG thereafter became a division of HA-LO known as HALO Custom Products (HCP). Stephen Wolff was made president of HCP. His employment agreement with HA-LO, which is governed by New York law, specifies that he was to be paid a base salary of $500,000 in the first year and $250,000 a year thereafter. The employment agreement also provided that Wolff had the opportunity to earn two types of bonus compensation, "Bonus Compensation" and "Additional Bonus Compensation." "Bonus Compensation" could be earned after Wolff's first year as President of HCP if, during the year,

1

the "Executive's 'gross profits' derived by the sales of the Executive exceeds Two Million Four Hundred Thousand Dollars ($2,400,000) during such period." Agreement § 3(b). The agreement defined "Executive" as Wolff and "Executive's gross profits" as:

> the net sales revenues generated on behalf of and expenses incurred by Employer ... by (i) the Executive ... (ii) any other individual who was a sales representative of Wolff Marketing Group, Inc. immediately prior to the effectiveness of the Merger, (iii) any new sales representative of the Employer, and (iv) entities merged into or acquired by Employer.

*Id.* § 3(d)(ii)(D). In other words, the term "Executive's gross profits" included the value of gross profits earned by Wolff and all of the HCP sales representatives.

The agreement also provided that Wolff could earn "Additional Bonus Compensation" if the "'gross profits' of the Employer for such calendar year equals or exceeds thirty-four percent (34%) of the net sales of the Employer for such calendar year." If that occurred, Wolff would receive compensation equal to "(1) ten percent (10%), multiplied by (2) the amount by which gross profits in such calendar year exceeds the Employer's gross profits for calendar year 1997." *Id.* § 3(c).[1] Finally, Wolff could earn stock options if "Executive's 'gross profits' equals or exceeds" $6,240,000 in the first year, $8,112,000 in the second year, and amounts that escalated every year thereafter. *Id.* § 3(d)(ii).

Wolff was paid his base salary through July 31, 2001. On July 30, 2001, HA-LO and certain of its subsidiaries filed petitions for reorganization under Chapter 11 of the Bankruptcy Code. Wolff filed a proof of claim in the bankruptcy court seeking $852,257 in "Bonus

---

[1] Wolff could also receive "Additional Bonus Compensation" if gross profits of the Employer was less than thirty-four percent of the net sales of the Employer, but then he would only receive Additional Base Compensation equal to eight percent multiplied by the amount by which gross profits exceeds the Employer's gross profits for 1997. Agreement § 3(c).

Compensation" and "Additional Bonus Compensation" for 1999-2001, and a priority claim for wages in the amount of $4,650. HA-LO filed a motion for summary judgment, arguing that Wolff was not entitled to "Bonus Compensation" because the gross profits from his sales had not surpassed $2,400,000, and was not entitled to "Additional Bonus Compensation" because the gross profits from HCP's sales failed to exceed those of WMG in 1997.

## Bankruptcy court's decision

In an oral ruling, the bankruptcy court granted HA-LO's motion for summary judgment in part, holding that Wolff was entitled to "Additional Bonus Compensation," but was not entitled to "Bonus Compensation" and was not eligible for a priority wage claim.

The court's decision was based on its interpretation of the bonus provisions of the employment agreement. Wolff argued that the "Bonus Compensation" provision entitled him to bonus compensation based on HCP's sales because HCP's sales had exceeded $2,400,000, as required by the agreement. The court, however, held that the phrase "Executive's 'gross profits' derived by the sales of the Executive" unambiguously meant that Wolff was only entitled to "Bonus Compensation" if the gross profits from the sales he personally completed surpassed $2,400,000. Because it was undisputed that Wolff's own sales amounted to far less than $2,400,000, the court found that the agreement did not entitle him to "Bonus Compensation."

As to the "Additional Bonus Compensation," the bankruptcy court found that Wolff was entitled to compensation for 2000 and 2001. The court found that the provision clearly stated that the availability of "Additional Bonus Compensation" was based on sales attributable to HCP as a whole, rather than only those sales attributable Wolff. The court examined business records showing that HCP's gross profits in 2000 and 2001 exceeded those of WMG in 1997, and then

used the formula provided in § 3(c)(i) to calculate Wolff's bonus, which came to $89,519. T. 0084-85.

The bankruptcy court spent little time discussing Wolff's priority claim for wages in the amount of $4,650. The court found that because Wolff made no mention of the amount in his pleadings and failed to provide any supporting evidence for the claim, the priority wage claim should be denied.

In sum, the bankruptcy court granted HA-LO's motion for summary judgment as to the "Bonus Compensation" and priority wage claims, but denied the motion as to Wolff's "Additional Bonus Compensation" claim and awarded him $89,510.

Wolff has appealed the bankruptcy court's judgment, arguing that the bankruptcy court erred in holding that the "Bonus Compensation" provision unambiguously limited the opportunity to earn bonus compensation to his personal sales and improperly denied his priority wage claim. For the reasons stated below, the Court affirms the bankruptcy's court decision as to Wolff's bonus compensation claims and reverses the decision as to the priority wage claim.

## Standard of Review

Both parties agree that the bankruptcy court's decision is subject to *de novo* review. *Bank v. Van Diest Supply Co.*, 303 F.3d 832, 835 (7th Cir. 2002).

## Discussion

1.  **Bonus Compensation**

Wolff claims on appeal that the bankruptcy court erred in holding that "Executive's 'gross profits' derived by the sales of Executive" unambiguously limited his potential for bonus compensation to sales attributable only to him, and not to HCP as a whole. Wolff makes several

4

arguments in favor of his claim that the "Bonus Compensation" provision is not limited to his personal sales, or, at the very least, ambiguous, all of which the Court finds unpersuasive. First, Wolff argues that no executive would agree to a compensation package based on his own sales because an executive has many responsibilities other than sales and thus does not have time to focus on sales. Wolff points to provisions of the employment agreement listing his duties as devoting "his [Wolff's] best efforts and substantially all of his business time to the performance of all duties pertaining to the Employer ... and with particularity Executive shall be responsible for the management of Employer." Agreement § 2. Wolff, however, overlooks other provisions which indicate that sales were, in fact, a significant part of his job as president. For example, the introduction of the employment agreement states, "Executive has had and will continue to be granted direct and substantial exposure to the customers and prospective customers of the Employer," suggesting that Wolff was provided with the opportunity to make sales, and encouraged to do so. Agreement 1. Moreover, § 3 clearly contemplates Wolff making his own sales, because it defines "Executive's 'gross profits'" as including sales generated by Executive. Agreement § 3(d)(ii)(D). Wolff's argument that a president of company would not engage in sales is unpersuasive.

Next Wolff argues that the syntax of the phrase "'gross profits' derived by the sales of the Executive" renders that phrase ambiguous. *See Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 270 F.3d 1117, 1124 (7th Cir. 2001) ("Ambiguity may be generated by lack of clarity in the syntax of a sentence."). This argument fails, however, because principles of contract interpretation support the bankruptcy court's determination that the phrase was unambiguous.

According to Wolff's interpretation, "Executive's 'gross profits' derived by sales of the

5

Executive" has the same meaning of "Executive's 'gross profits,'" namely, sales attributable to all sales representative of HCP, including Wolff. The two clauses must, however, have different meanings or else the phrase "denied by sales of the Executive" would be rendered meaningless. *Two Guys From Harrison-NY, Inc. v. S.F.R. Realty Assoc.*, 63 N.Y.2d 396, 403, 472 N.E.2d 315, 318 (1984) ("In construing a contract, one of the court's goals is to avoid an interpretation that would leave contractual clauses meaningless."). The bankruptcy court thus properly concluded that the phrase "derived by sales of the Executive" unambiguously modified "Executive's 'gross profits.'"

A review of other provisions of the employment agreement provides support for the bankruptcy court's determination that the phrase "derived by sales of the Executive" modifies "Executive's 'gross profits'" so as to limit it to sales attributable to Wolff himself. Section three of the employment agreement provides for compensation in the form of options. Agreement § 3(d)(ii). The provision reads "Executive shall be entitled to receive twenty-five thousand option to purchase the common stock of HA-LO if in such year the Executive's "gross profits" equals or exceeds the following amount ..." *Id.* In this provision, the parties chose not to modify the term "Executive's 'gross profits'" and thus provided that options would be earned based on the gross profits earned by HCP, not Wolff individually. Thus, in the very same provision in which the drafters wrote "Executive's gross profits derived by sales of the Executive," they used the term "Executive's gross profits" alone. The two phrases must have different meanings, or the modifier "derived by sales of the Executive" would be rendered mere surplusage. *Zolotar v. New York Life Ins.*, 172 A.D.2d 27, 30, 576 N.Y.S.2d 850, 852 (1991).

After determining that the contract language "Executive's 'gross profits' derived by the

sales of the Executive" was unambiguous, the bankruptcy court found that extrinsic evidence of the contracting parties' intent was inadmissible. This was proper because, under New York law, a court may turn to extrinsic evidence "[o]nly when the language of the contract is ambiguous." *Curry Road Ltd. v. K Mart Corp.*, 893 F.2d 509, 511 (2d Cir. 1990) (applying New York law).

After finding the agreement's Bonus Compensation standard unambiguous, the bankruptcy court had to determine the meaning of the phrase "derived by sales of the Executive." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569, 780 N.E.2d 166, 170 (2002). Because the plain meaning of "derived" is "to receive ... from a specified source," Merriam-Webster's Collegiate Dictionary 311 (10th Ed. 1999), the bankruptcy court was correct in concluding that the phrase limited "Bonus Compensation" to gross profits earned by Wolff's personal sales.

To determine whether Wolff's sales exceeded the $2,400,000 threshold required by the agreement, the court looked to HCP's business records. These records show that the total sales attributable to Wolff himself were $80,282 in 1999, $388,380 in 2000, and $397,300 in 2001. T. 0080. These sales figures are far short of $2,400,000. The bankruptcy court thus correctly concluded that Wolff was not entitled to "Bonus Compensation."

Because the bankruptcy court correctly concluded that the "Bonus Compensation" provision was unambiguous and had a plain meaning, under which Wolff was not entitled to "Bonus Compensation," it did not err by granting summary judgment in favor of HA-LO on the bonus compensation claim. *Sayers v. Rochester Telephone Corp. Suppl. Management Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993) (summary judgment should be granted in a contract dispute only when the language of the agreement is "unambiguous and conveys a definite meaning").

## 2. Priority wage claim

The Bankruptcy Code provides that a claim for "wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual" is entitled to priority to the extent that it is earned within ninety days before the petition date. 11 U.S.C. § 506(a)(3)(A). The bankruptcy court denied Wolff's priority wage claim on the basis that he failed to pursue the claim, made no mention of it in his pleadings, and failed to provide any supporting evidence for the claim. T. 0087.

Wolff argues that he is entitled to a priority claim for the portion of the "Additional Bonus Compensation" the bankruptcy court found was entitled to earned within ninety days of July 31, 2001. HA-LO does not dispute that the "Additional Bonus Compensation" awarded to Wolff qualifies as "wages and compensation" under 11 U.S.C. § 507(a)(3)(A). Rather, it argues that Wolff did not earn any bonus compensation within the ninety day time period because the bankruptcy court found that he was entitled to "Additional Bonus Compensation" only through December 2000. HA-LO's argument fails because the bankruptcy court clearly found that Wolff was entitled to $13,354 in "Additional Bonus Compensation" for his work from January through July 2001. T. 0086-87. Wolff is therefore entitled to priority on the portion of the $13,354 earned within ninety days prior to July 31, 2001. Thus, the priority wage claim must be remanded to the bankruptcy court for determination of the amount entitled to priority.

## Conclusion

For the reasons stated above, the Clerk is directed to enter judgment affirming the decision of the bankruptcy court to grant summary judgment in favor of HA-LO on Wolff's "Bonus Compensation" claim, and reversing the decision of the bankruptcy court to dismiss

8

Wolff's priority wage claim.

                                                            _____
                                                            MATTHEW F. KENNELLY
                                                            United States District Court

Date: August 11, 2005